UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MAFAYETTE M. FIELDS,

                Plaintiff,

v.                                        Case No. 20-cv-1211-pp

CO II MILLER, DANIELLE FOSTER,
DAWN FOFANA, CATHY JESS,
DR. RYAN HOLZMACHER,
JAMES GREER and MARY MUSE,

                Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND DISMISSING CASE**

Mafayette M. Fields, an inmate at Oshkosh Correctional Institution who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

1

On August 11, 2020, the court ordered the plaintiff to pay an initial partial filing fee of $25.25. Dkt. No. 5. The court received that fee on August 31, 2020. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint**

   A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.     The Plaintiff's Allegations

The plaintiff is confined at the Oshkosh Correctional Institution. Dkt. No. 1 at 2. He has sued CO II Miller, a guard at Oshkosh; Oshkosh HSU (Health Services Unit) Managers Daniel Foster and Dawn Fofana; Oshkosh Warden Cathy Jess; and Ryan Holzmacher, James Greer and Mary Muse, who are Wisconsin Department of Corrections (DOC) policy makers and members of the "Entire policy committee." Id. at 2-3.

The plaintiff alleges that he has been diagnosed with "muscle twitches disorder" and that he also suffers from "spasticity associated with multiple sclerosis and severe pain." Id. at 3. He states that he regularly has involuntary twitches of his eyes, head, face, neck, chest, stomach, arms and legs. Id. On February 8, 2019, Dr. Tannan allegedly prescribed the plaintiff the medication Baclofen, 15 milligrams three times daily (morning, noon, bedtime), through November 24, 2019, to address these symptoms. Id.

The plaintiff alleges that on May 16, 2019, defendant CO II Miller denied him his midday Baclofen medication. Id. at 4. The plaintiff says that when he returned from school and asked Miller for the medication, Miller stated that he

3

was not going to administer the medication to the plaintiff and that Miller would have to call the HSU "and see if he was going to be able to hand them out to Mafayette Fields." Id. The plaintiff states that Miller called the HSU and then told the plaintiff that per HSU's order he would not give him his medication. Id. The plaintiff attaches to his complaint a Medication Administration Record that says that he refused his Baclofen medication on May 16, 2019 at 11:30 a.m. Dkt. No. 1-1 at 12.

The plaintiff says that on February 4, 2019, defendant Warden Cathy Jess issued a memorandum to inmates on the guidelines for the medication pass process. Id. The memorandum states in relevant part: "You MUST report to the desk AT MEDICATION TIME to take or refuse any medication you are prescribed. This means, you will not be able to report refusals ahead of time or after medication pass time." Dkt. No. 1 at 4; Dkt. No. 1-1 at 24. The plaintiff states that Jess's policy was not always followed. Dkt. No. 1 at 4. He also states that there is "an in-house policy that allows individuals who are at work sites to take their medications when they return from that area." Id.

The plaintiff alleges that because he was away from the unit during school hours, he routinely took his medication after school hours, on or after 1:00 p.m., Monday through Friday. Id. He also says that at times he would be required to attend school from 7:00 a.m. until 7:00 p.m. and that when that happened, he would return to the unit specifically to take his medication, like he did on May 16, 2019. Id. The plaintiff states that staff "deliberately and recklessly disregarded risk of harm in failing to dispense prescribed neurological medications" which he says constitutes "deliberate indifference and negligence manifested by prison staff intentionally denying or delaying access to medication once prescribed." Id.

4

The plaintiff asserts that officers routinely administer inmates their medication after work hours. Id. He says that inmates who work in the main kitchen and other areas of the institution take their medication after their medication is scheduled to be given to them. Id. According to the plaintiff, he should also be allowed this opportunity, and he says was allowed to do this until May 16, 2019. Id.

The plaintiff alleges that defendants Foster and Fofana as well as "Entire policy Committee" members Holzmacher, Greer and Muse ratified a "system" that denies inmate adequate medical attention "due to a policy of not abiding by doctor's orders[.]" Id. at 5.

The plaintiff seeks compensatory and punitive damages. Id.

C. Analysis

A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment where he is deliberately indifferent "to serious medical needs of prisoners." Estelle v. Gamble, 429 U.S. 97, 104 (1976). "To state a cause of action, a plaintiff must show (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." Duckworth v. Ahmad, 532 F.3d 675, 679 (7th Cir. 2008). "A medical need is sufficiently serious if the plaintiff's condition 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention.'" Roe v. Elyea, 631 F.3d 843 857 (7th Cir. 2011) (quoting Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005)). The condition does not need to be life-threatening to be serious; it needs only to be "a condition that would result in further significant injury or unnecessary and wanton infliction of pain" if not addressed. Gayton v. McCoy, 593 F.3d 610, 620 (7th Cir. 2010).

A plaintiff must allege "that an official actually knew of and disregarded a substantial risk of harm." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (emphasis in original). The plaintiff also "must show more than mere evidence of malpractice." Id. The plaintiff must show that the prison official's choices "were so 'significant a departure from accepted professional standards or practices' that it is questionable whether they actually exercised professional judgment." Stallings v. Liping Zhang, 607 F. App'x 591, 593 (7th Cir. 2015) (quoting Pyles v. Fahim, 771 F.3d 403, 409 (7th Cir. 2014)).

The plaintiff alleges that he missed one dose of medication, one time, on May 16, 2019. He says that when he returned to his unit from school to take his medication, he asked Miller for the medication and Miller called the HSU to see if he could administer it to the plaintiff. The plaintiff states that per HSU's orders, Miller did not give him the medication. Thought it is not clear, it appears that the policy announced by Jess's February 4, 2019 memo—requiring inmates to report to medication pass at medication time—may have prevented the plaintiff from receiving his midday medication on May 16, 2019.

Deliberate indifference requires that the defendants know of a "substantial risk of harm" to the inmate's health or safety and disregard it. West v. Millen, 79 F. App'x 190, 193-94 (7th Cir. 2003) (quoting Dunigan ex rel. Nyman v. Winnebago Cty., 165 F.3d 587, 591 (7th Cir. 1999)); see also Walker v. Benjamin, 293 F.3d 1030, 1037 (7th Cir. 2002). Conduct must be intentional or criminally reckless; even gross negligence is not enough. West, 79 F. App'x at 193-94 (citing Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001)). Intentionally interfering with a medical staff's prescribed treatment in the face of a substantial risk to an inmate's health may constitute deliberate indifference. Id. (citing Zentmyer v. Kendall Cty., 220 F.3d 805, 812 (7th

6

Cir.2000). However, an occasional missed dose of medicine, without more, does not violate the Eighth Amendment. Id. (citing Zentmyer, 220 F.3d at 811-12).

The plaintiff does not state that he suffered any adverse symptoms from missing the one dose of medication. Nor does he allege that he has missed any other doses of his medication. The plaintiff has not stated an Eighth Amendment claim based on missing one dose of his medication because the court cannot plausibly infer that any defendant acted with deliberate indifference given a single missed dose of medication with no reported adverse effects.

The plaintiff also states that Jess's policy was not consistently followed because some inmates who work at certain institution jobs were permitted to take their medications at different times. The plaintiff also says that staff previously had allowed him to take his medication after the designated time, such as when he arrived back on the unit as late as 7:00 p.m. after a long day at school. The plaintiff appears to allege that denying him the ability to take his medication late violated his right to equal protection because inmates who work jobs were allowed to take medication late. In this context, he references the policy makers—defendants Greer, Holzmacher and Muse. It is not clear why the plaintiff believes that the policy makers violated his rights; he is alleging that it was prison staff who did not follow the policy and applied it differently to some inmates than to others.

To state a claim for unconstitutional discrimination, a plaintiff must show "that he is a member of a protected class, that he is otherwise similarly situated to members of the unprotected class, and that he was treated differently from members of the unprotected class." Brown v. Budz, 398 F.3d 904, 916 (7th Cir. 2005); see also, Lisle v. Welborn, 933 F.3d 705, 719-20 (7th

Cir. 2019). The plaintiff's allegation that he was discriminated against because staff at Oshkosh make exceptions to Warden Jess's policy for inmates who work at certain jobs is insufficient to support an equal protection claim because he has not alleged that he is a member of a protected class. The plaintiff may not proceed on an equal protection claim.

The plaintiff has not alleged facts that support a claim for relief under federal law. Thus, the court will dismiss this case for failure to state a claim.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim. The clerk will enter judgment accordingly.

The court **ORDERS** that the Clerk of Court must document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).

The court **ORDERS** that the Warden of Oshkosh Correctional Institution or her designee must collect the **$324.75** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Oshkosh Correctional Institution.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within thirty days of the entry of judgment. See Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within twenty-eight days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 8th day of February, 2021.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

9

Case 2:20-cv-01211-PP   Filed 02/08/21   Page 9 of 9   Document 7